IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**UNITED STATES OF AMERICA**

**v.**                                            **Criminal Case No.: 4:21-cr-00080**

**MANUEL EDUARDO CURO BIYEZ,**
                    **Defendant.**

POSITION OF DEFENDANT
WITH RESPECT TO SENTENCING

COMES NOW, the defendant, Manuel Eduardo Curo Biyez, by and through counsel, and files his Position On Sentencing pursuant to the Federal Rule of Criminal Procedure 32, § 6A1.2 of the advisory United States Sentencing Guidelines ("USSG" or "Guidelines") and the Sentencing Procedure Order. Counsel has received and reviewed the Presentence Report ("PSR") with the defendant and respectfully states that there are no objections to the PSR that would affect the advisory guidelines. The defendant agrees with the government and Probation that the total offense level in this case should be at level 23, and with a criminal history category of I, placing Mr. Biyez's advisory guideline range between 46 to 57 months but submits that a sentence even at the low end of 46 months does not properly reflect his minimal level of involvement and is far greater than necessary to reflect the sentencing factors listed in 18 U.S.C. § 3553(a).

BACKGROUND

On December 13, 2021, Mr.Biyez was named in a one count Indictment returned by the Grand Jury for the Eastern District of Virginia, charging the defendant with Possession with Intent to Distribute Cocaine on Board a Vessel, in violation of 46 U.S.C. § 70503, on or about December

2, 2021; and a forfeiture allegation pursuant to 18 U.S.C. § 924(d), 982(a)(1); 21 U.S.C. § 853; and, 28 U.S.C. § 2461.

In accordance with the terms of a written plea agreement, Mr. Biyez appeared before The Honorable Roderick C. Young of the United States District Court and pled guilty to Count One of the Indictment. The Plea Agreement provided that the parties agreed that the following guidelines apply in this case: a base offense level of 32 (more than 450 kilograms of cocaine); a 4 point reduction for the defendant's minimal role in the criminal activity; a 3 point reduction for the defendant's acceptance of responsibility; and a 2 point reduction based upon the safety valve provision.  The United States also agreed that it would recommend the low-end of the sentencing guidelines range as adopted by the Court provided the defendant has no convictions that would qualify as crimes of violence or drug trafficking crimes.  The Court accepted the guilty plea and sentencing was continued pending the completion of a presentence report.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

The details of the offense are set forth in the PSR in a verbatim citing of the Statement of Facts, encompassing PSR ¶ 6. Since November 2018, the Drug Enforcement Administration (DEA) and Homeland Security Investigations (HSI) have been investigating maritime smuggling operations. On December 2, 2021, while on routine patrol, a marine patrol aircraft detected a target of interest in the Eastern Pacific, approximately 52 miles Northwest of Esmeraldas, Ecuador. United States Coast Guard Cutter (USCGC) Vigilant diverted to intercept and launched a helicopter as well as various small boats to investigate an open hulled low-profile vessel (LPV) with no markings.  A right of visitation boarding was conducted and three individuals were encountered, including, the defendant, Manuel Eduardo Curo Biyez.  A search was conducted which led to the discovery of

1,449 kilograms of cocaine in the bulkhead.  After being informed of his rights pursuant to *Miranda*, Mr. Biyez admitted his involvement of assisting in the transportation of cocaine.  Mr. Biyez advised that a group of unknown men came to his residence and placed a hood over his head.  Mr. Biyez was driven to an unknown location and ultimately dropped off on a boat where his co-defendants were already aboard. Mr. Biyez was then transported via boat to the LPV which was at sea. Mr. Biyez stated this was his first time doing anything like this and his primary role was to operate the boat. Mr. Biyez was paid $20,000 Columbian Pesos (approximately $5.00 U.S.).

BACKGROUND

Mr. Biyez is 28 years of age and was born in Tumaco, Columbia, to the non-marital union of Samantha Carlina Curo Yepez and an unknown male.  Mr. Biyez has never met his father.  Mr. Biyez has 6 half brothers and sisters who reside in Columbia and Ecuador.  Mr. Biyez's mother currently resides in Ecuador.  Mr. Biyez's mother left him with his grandmother and grandfather when he was approximately 6 years of age.  Mr. Biyez's grandmother died approximately 2 years later.  Mr. Biyez's grandfather provided for the family working as a fisherman and farmer but the family struggled financially.  Mr. Biyez's grandfather passed away approximately 2 years ago.

Mr. Biyez has a common law marriage to Viviana Angulo.  The couple has a 2 year old daughter and a son that is approximately 7 months of age, although Mr. Biyez cannot confirm the exact age or gender of his youngest child because he was in custody on the instant offense at the time of birth and he has been unable to communicate with his wife since his arrest.  According to Mr. Biyez, his wife had moved to Ecuador to live with her mother as a result of the failing economy and the family's financial situation.

Mr. Biyez began working with his grandfather and stopped attending school in approximately

the third grade.  Mr. Biyez has no history of substance abuse, mental health or criminal convictions.

<u>THE APPROPRIATE SENTENCE IN THIS CASE</u>

In determining Mr. Biyez's sentence, the Court, pursuant to 18 U.S.C. § 3553(a), the Court shall consider: (1) the nature and circumstances of the offense and the history and characteristics of Mr. Biyez ; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of Mr. Biyez , and (D) to provide Mr. Biyez with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established for [the offense]; (5) any pertinent policy issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  As the Court well knows, the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the above factors. Neither the statute itself nor *United States v. Booker*, 543 U.S. 220 (2005), suggests that any one of these factors is to be given greater weight than any other factor.

In some cases, the Guidelines sentencing range will roughly approximate a sentence that would achieve the objectives of § 3553(a).  *Kimbrough v. United States*, 552 U.S. 85, 109, 128 S.Ct. 558 (2007).  In these instances, the advisory ranges are typically the product of the Commission's careful study, and are "based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007).  This is not always the case in all of the Guideline provisions.  Where the guideline does not reflect the careful

study of the Commission, it is likely not "a reliable indicator of the Sentencing Commission's perspective on a fair sentence." *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D.Iowa 2008). In those instances, the Court may vary up or down on a case by case basis, after making an individualized determination that the Guidelines would yield an excessive sentence. *Spears v. United States*, 555 U.S. 261, 265, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (per curiam). When a court finds that the Guideline consistently yields sentences greater than necessary to achieve the purposes of § 3553(a), the court may categorically reject a Guideline based upon policy grounds. *Id*.; *United States v. VandeBrake*, 679 F.3d 1030, 1039-40 (8th Cir.2012) (affirming categorical rejection of Guideline for antitrust offenses); see also, *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir.2011); *United States v. Grober*, 624 F.3d 592, 599–600 (3d Cir.2010); *United States v. Corner*, 598 F.3d 411, 415 (7th Cir.2010) (en banc); *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir.2008) (en banc); *United States v. Rodriguez*, 527 F.3d 221, 227 (1st Cir.2008).

Mr. Biyez is a 28 year old man whose poor decision making has had a significant and negative impact on his life. As a result of the failing economy in his village, Mr. Biyez put his life at risk. Mr. Biyez was paid the equivalent of approximately $5.00 to operate a boat. Mr. Biyez is before this Honorable Court having accepted full responsibility for his criminal behavior. Despite the wrongfulness of his actions, neither Mr. Biyez nor society will benefit from the imposition of an extended prison term. A sentence in the range of 12 to 24 months would promote respect for the law and adequately reflect the seriousness of his offense.

<u>REFLECTING THE SERIOUSNESS OF THE OFFENSE,<br>PROMOTING RESPECT FOR THE LAW, PROVIDING JUST PUNISHMENT,<br>DETERRENCE AND PROTECTING THE PUBLIC FROM MR. BIYEZ</u>

Section 3553(a)(2)(B) requires a sentencing court to impose a sentence that affords adequate

deterrence to criminal conduct. Mr. Biyez deeply regrets his actions and every day wishes he had done things differently.  A sentence of 12 to 24 months would send a message to other persons that the court will impose a just sentence.

<u>NEED TO PROTECT SOCIETY</u>

Section 3553(a)(2)(c) requires a sentencing court to impose a sentence that protects the public from other crimes of the defendant.  A sentence within the advisory guideline range is far in excess of what is just or necessary in this case.  The proceedings up until this point, including transporting Mr. Biyez from his home country, the separation from his family and the isolation of being unable to communicate with anyone while being detained and incarcerated, coupled with a sentence of 12 to 24 months with a period of supervised release is sufficient to ensure that Mr. Biyez will never again involve himself in criminal conduct.  Mr. Biyez is aware of the consequences of his actions, and the negative impact it has caused his family.  Mr. Biyez is aware of the seriousness of this offense and is extremely remorseful for his actions.

<u>THE NEED TO AVOID UNWARRANTED DISPARITIES<br>AMONG DEFENDANTS WITH SIMILAR RECORDS<br>WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT</u>

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct.  18 U.S.C. § 3553(a)(6).  The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, see *Gall*, 552 U.S. at 55 ("need to avoid unwarranted similarities among other co-conspirators who were not similarly situated").

A variance downward from the voluntary sentencing guidelines and a limited term of supervised release would avoid unwarranted sentence disparity, and would also serve the mandate

of § 3553(a) to impose a sentence sufficient, but not greater than necessary to punish Mr. Biyez's

conduct.  Mr. Biyez's primary involvement, similar to other cases that have been prosecuted recently

in the Eastern District of Virginia are centered on his assistance in shipping a large amount of drugs

in international waters.[1]

<u>ARGUMENT</u>

The Court should consider all of the 3553(a) factors to determine a sentence and, "must make

an individualized assessment based on the facts presented." Gall v. United States, 552 U.S. 38, 50

(2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge

to consider every convicted person as an individual and every case as a unique study in the human

failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id.,

at 52, (quoting Koon v. United States, 518 U.S. 81, 98, (1996).

Mr. Biyez's guidelines in this case are primarily based on the weight and type of the drugs

involved. Furthermore, "[T]he Guidelines ranges for drug trafficking offenses are not based on

empirical data, Commission expertise, or the actual culpability of defendants…. Instead, they are

driven by drug type and quantity, which are poor proxies for culpability." United States v. Diaz, 2013

WL 322243, No. 11-CR-00821-2 (E.D.N.Y. Jan. 28, 2013). Because the guidelines use as their

primary focus drug weight, the actual involvement and culpability of the Defendant are largely

ignored.

In the present case, Defendant did not maintain his own set of local clients, did not "front"

any advancements of narcotics dependent on future sales, and did not share in any profits.

---

[1]*See* United States v. Pineda, et. al., No.4:20-CR-66 (E.D.V.A. July 21, 2021); *see also* United States v. Smith-Meria, et. al., No. 4:20-CR-38 (E.D.V.A. April 2, 2021).

Defendant's primary involvement, similar to other cases that have been prosecuted recently in the Eastern District of Virginia1 are centered on his assistance in shipping a large amount of drugs in international waters.[2] These boat crews are routinely made up of very poor, impoverished, individuals from small countries who are used by the larger drug organizations because these crew members are cheap labor and expendable. The incentive for Mr. Biyez's involvement in this scheme was a minuscule fee, and he was not responsible for the actual distribution or setting of any prices. Mr. Biyez has acknowledged that the motivating factor in his involvement in this case was money, he has expressed true remorse for his actions, understands that punishment must follow, and has accepted responsibility for his conduct.

As he must now face an appropriate disposition from the court for his actions, it is Defendant's position that the Court sentence him only to those conditions that are necessary to satisfy the 3553(a) factors. "Incarceration is often necessary, but the unnecessarily punitive extra months and years the drug trafficking offense guideline advises us to dish out matter: children grow up; loved ones drift away; employment opportunities fade; parents die." Id.

 To use quantity as the primary indicator of Defendant's level of culpability and therefore establish a guideline range to suggest an appropriate amount of incarceration does very little to promote fairness in arriving at a just sentence for Defendant's conduct in this matter. When considering this Defendant's actual level of involvement, and his prior background and history, a sentence within the guidelines range would be extremely punitive and far greater than that which is needed to address the sentencing factors listed in 18 U.S.C. § 3553(a).

---

[2]*See* United States v. Pineda, et. al., No.4:20-CR-66 (E.D.V.A. July 21, 2021); *see also* United States v. Smith-Meria, et. al., No. 4:20-CR-38 (E.D.V.A. April 2, 2021).

As noted in the PSR, Defendant was raised in Costa Rica in very poor conditions and began working as a fisherman around the age of 12 where a 22-day fishing trip would earn him approximately $80.00 dollars when converted to US currency. Furthermore, as stated in the Pre-Sentence Report, Defendant is the father of an infant son he has not yet seen in-person because he was born during Defendant's incarceration for the current charge. Defendant is anxious to return back to Limon, Costa Rica so he can reunite with his family and establish a positive relationship with his infant son.

When considering the Defendant's age, his stable family life, his absence of any criminal record, and his low-level, limited participation in this offense, a sentence within the appropriate guideline range would exceed the sentencing goals as provided in 18 U.S.C. § 3553. Mr. Biyez did not make the primary arrangements for the organization of distribution, did not have any clients or list of potential buyers, his primary motivation was the fee he received. Because the guidelines focus primarily on the weight of the drugs involved and not on the culpability of the Defendant's conduct, the guidelines in this situation are greater than that which is necessary to reflect an appropriate sentence.

### SAFETY VALVE  PURSUANT TO 18 U.S.C. § 3553(f) and §5Cl.2

Pursuant to 18 U.S.C. § 3553(f), Mr. Biyez should be eligible for any safety valve relief. In order to be eligible for safety valve relief, there are five requirements for 18 U.S.C. § 3553(f) to take effect: **(1)** the defendant cannot have more than 4 criminal history points, cannot have a prior 3 point offense, and cannot have a prior 2 point violent offense, **(2)** the offense did not involve firearms or violence, **(3)** the offense did not result in death or serious bodily injury to any person, **(4)** the defendant was not an organizer or leader of others in the offense as determined under the sentencing

guidelines, and **(5)** the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense. Mr. Biyez has absolutely no criminal history other than the instant offense. There is no allegation regarding violence, Mr. Biyez was not a leader or organizer of others, and Mr. Biyez has fully cooperated during this process.

CONCLUSION

Mr. Biyez respectfully requests that this court give consideration to the foregoing factors and find that a sentence anywhere within or close to the advisory guideline range would be overly harsh. Accordingly, in light of the statutory factors and arguments above, Mr. Biyez, recognizing and acknowledging the serious nature of his offenses, respectfully moves this Honorable Court, for the reasons stated herein, to impose a sentence in the range of 12 to 24 months of incarceration. This sentence is sufficient, but not greater than necessary to satisfy the sentencing factors set forth in 18 U.S.C. § 3353(a).

Respectfully submitted,

/s/
Michael P. Jones
Attorney for Defendant
Virginia State Bar No. 36164
MICHAEL P. JONES, P.C.
11847 Canon Boulevard, Suite 1
Newport News, VA 23606
(757) 873-2333
(757) 873-5522 fax
mjones@michaelpjonespc.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of August, 2022, a true and correct copy of the above and foregoing Defendant's Position with Respect to Sentencing Factors was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Eric M. Hurt
> Assistant United States Attorney
> 721 Lake Front Commons, Suite 300
> Newport News, Virginia 23606
> eric.hurt@usdoj.gov

I further certify that on this 25th day of August 2022, I caused a true and correct copy of the foregoing to be delivered to the following:

> Probation Officer Joshua A. Coleman
> United States Probation Officer
> 827 Diligence Drive, Suite 210
> Newport News, Virginia 23606
> joshua_coleman@vaep.uscourts.gov

_____/s/_____
Michael P. Jones
Attorney for Defendant
Virginia State Bar No. 36164
Michael P. Jones, P.C.
11847 Canon Boulevard, Suite 1
Newport News, VA 23606
(757) 873-2333
(757) 873-5522 - fax
mjones@michaelpjonespc.com

-11-